IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHANNON SIMMONS and | : | |
| ERANUS ROBERSON, | : | Civil Action File No. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FUTO's, INC., STEVE "JOHN" | : | |
| FUTO, CHARLES FUTO, and | : | |
| NOMAN RASHID, | : | |
| | : | |
| Defendants. | : | |

---

## COMPLAINT

---

Plaintiffs Shannon Simmons ("Simmons") and Eranus Roberson ("Roberson") (collectively "Plaintiffs") bring this Complaint against Defendants Futo's, Inc. ("Futo's"), Steve "John" Futo ("J. Futo"), Charles Futo ("C. Futo"), and Noman Rashid ("Rashid") (collectively "Defendants") and shows the Court as follows:

## Introduction

1.

This is a wage and hour case in which Plaintiffs seek to recover overtime wages earned but not paid in violation of the overtime pay requirements of the Fair Labor Standards Act, 29 U.S.C. § 207(a).

2.

Defendant Futo's employed Simmons initially as a tow truck dispatcher and later as a tow truck driver from in or about 2014 through the date of filing this action. Although Simmons regularly worked more than forty hours each week, Defendants failed to pay him an FLSA overtime premium for such overtime hours.

3.

Defendant Futo's employed Roberson as a tow truck driver from in or about 2014 through mid-2019. Although Roberson regularly worked more than forty hours each week, Defendants failed to pay him an FLSA overtime premium for such overtime hours.

**Jurisdiction and Venue**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Futo's is located in Atlanta, Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**The Parties**

6.

Simmons is a natural person who resides in DeKalb County, Georgia.

7.

Roberson is a natural person who resides in Fulton County, Georgia.

8.

Futo's has employed Simmons as a tow truck driver in and around Atlanta, Georgia from approximately November 2018 through the date of filing this action.

9.

Futo's employed Roberson as a tow truck driver in and around Atlanta, Georgia from approximately 2014 through mid-2019.

10.

At all times relevant from November 2018 through the date of filing the within Complaint, Simmons has been an "employee" of Futo's within the meaning of 29 U.S.C. § 203(e)(1).

11.

At all times relevant from August 2018 through mid-2019, Roberson has been an "employee" of Futo's within the meaning of 29 U.S.C. § 203(e)(1).

12.

Futo's is a domestic profit corporation organized under the laws of the State of Georgia.

13.

At all times material hereto, Futo's has been an "employer" of Plaintiffs within the meaning of 29 U.S.C. §203(d).

14.

Futo's is subject to the personal jurisdiction of this Court.

15.

Defendant Futo's may be served with process through its registered agent, Diane Irene Leonall, at 2050 Lidell Drive, Atlanta, Georgia 30324.

16.

At all times relevant from August 2018 through February 2019, Futo's, Inc. was owned and/or operated by Defendants Steve "John" Futo and Charles Futo.

17.

At all times relevant from August 2018 through February 2019, Plaintiffs were "employees" of Steve "John" Futo within the meaning of, 29 U.S.C. § 203(e)(1).

18.

Defendant J. Futo resides in White County, Georgia.

19.

At all times relevant from August 2018 through February 2019, J. Futo was an "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

20.

J. Futo is subject to the personal jurisdiction of this Court.

21.

J. Futo may be served with process at 220 Warwick Road, Cleveland, Georgia 30528.

22.

At all times relevant from August 2018 through February 2019, Plaintiffs were "employees" of Charles Futo within the meaning of, 29 U.S.C. § 203(e)(1).

23.

Defendant C. Futo resides in Fayette County, Georgia.

24.

At all times relevant from August 2018 through February 2019, C. Futo was an "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

25.

C. Futo is subject to the personal jurisdiction of this Court.

26.

C. Futo may be served with process at 312 Hampton Road, Fayetteville, Georgia 30215.

27.

In or about March 2019, Defendants Steve John Futo and Charles Futo transferred their business interest and/or ownership in Futo's, Inc. to Diane Irene Leonall.

28.

Since March 2019, Futo's, Inc. has been owned and operated by Diane Irene Leonall and her husband, Defendant Noman Rashid.

29.

At all times material from March 2019 through the present date, Simmons has been an "employee" of Rashid within the meaning of, 29 U.S.C. § 203(e)(1).

30.

At all times material from March 2019 through mid-2019, Roberson was an "employee" of Rashid within the meaning of, 29 U.S.C. § 203(e)(1).

31.

Defendant Rashid resides in Fulton County, Georgia.

32.

During their respective periods of employment from March 2019 through the present date, Rashid was an "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

33.

Rashid is subject to the personal jurisdiction of this Court.

34.

Rashid may be served with process at 2079 Asgard Court, NE, Atlanta, Georgia 30345.

**Individual Coverage**

35.

Plaintiffs operated tow trucks owned by Defendants for the purpose of providing towing services for the operators and owners of disabled or abandoned vehicles on

Interstate and U.S. Highways, thereby keeping the instrumentalities of interstate commerce free from obstructions.

36.

At all times relevant from August 2018 through mid-2019, Roberson "engaged in commerce" within the meaning of 29 U.S.C. § 207(a)(1).

37.

At all times relevant from November 2018 through the date of filing of this Complaint, Simmons "engaged in commerce" within the meaning of 29 U.S.C. § 207(a)(1).

**Enterprise Coverage:**

38.

At all times relevant from August 2018 through the date of filing the within Complaint (hereinafter "the Relevant Time Period"), Futo's has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

39.

Throughout the Relevant Time Period, Futo's employed two or more persons who regularly provided roadside services to customers on Interstate and U.S. highways, thereby providing for the free flow of traffic on the national highway system.

40.

Throughout 2018, Futo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

41.

Throughout 2019, Futo's had two or more "employees engaged in commerce" as within the meaning of 29 U.S.C. § 203(s)(1)(A).

42.

Throughout 2020, Futo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

43.

Throughout 2021, Futo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

44.

Throughout the Relevant Time Period, Plaintiffs and other employees of Futo's handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Futo's including office supplies, office furniture, trucks, tools, gasoline, engine oil, and cellular phones.

45.

Throughout 2018, Futo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

46.

Throughout 2019, Futo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

Throughout 2020, Futo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" a within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.

Throughout 2021, Futo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

49.

Throughout 2018, Futo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.

Throughout 2019, Futo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

51.

Throughout 2020, Futo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

52.

Throughout 2021, Futo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

53.

Throughout Relevant Time Period, Futo's has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

**Statutory Employer**

54.

J. Futo hired Plaintiffs to work on behalf of Futo's.

55.

Throughout the period from August 2018 through February 2019, J. Futo was an owner and/or operator of Futo's.

56.

Throughout the period from August 2018 through February 2019, J. Futo exercised operational control over Simmons' work activities.

57.

Throughout the period from August 2018 through February 2019, J. Futo was involved in the day-to-day operation of the Futo's.

58.

Throughout the period from August 2018 through February 2019, Futo's vested J. Futo with supervisory authority over Simmons.

59.

Throughout the period from August 2018 through February 2019, J. Futo exercised supervisory authority over Simmons.

60.

Throughout the period from August 2018 through February 2019, J. Futo scheduled Simmons' working hours or supervised the scheduling of Simmons' working hours.

61.

Throughout the period from August 2018 through February 2019, J. Futo exercised authority and supervision over Simmons' compensation.

62.

Throughout the period from August 2018 through February 2019, C. Futo was an owner and/or operator of Futo's.

63.

Throughout the period from August 2018 through February 2019, C. Futo exercised operational control over Simmons' work activities.

64.

Throughout the period from August 2018 through February 2019, C. Futo was involved in the day-to-day operation of the Futo's.

65.

Throughout the period from August 2018 through February 2019, Futo's vested C. Futo with supervisory authority over Simmons.

66.

Throughout the period from August 2018 through February 2019, C. Futo exercised supervisory authority over Simmons.

67.

Throughout the period from August 2018 through February 2019, C. Futo scheduled Simmons' working hours or supervised the scheduling of Simmons' working hours.

68.

Throughout the period from August 2018 through February 2019, C. Futo exercised authority and supervision over Simmons' compensation.

69.

Throughout the period from March 2019 through the date of filing of this Complaint, Rashid has been an owner and/or operator of Futo's.

70.

Throughout the period from March 2019 through the date of filing of this Complaint, Rashid has exercised operational control over Plaintiffs' work activities.

71.

Throughout the period from March 2019 through the date of filing of this Complaint, Rashid has been involved in the day-to-day operation of the Futo's.

72.

Throughout the period from March 2019 through the date of filing of this Complaint, Futo's vested Rashid with supervisory authority over Plaintiffs.

73.

Throughout the period from March 2019 through the date of filing of this Complaint, Rashid has exercised supervisory authority over Plaintiffs.

74.

Throughout the period from March 2019 through the date of filing of this Complaint, Rashid scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

75.

During the period from March 2019 through the date of filing of this Complaint, Rashid has exercised authority and supervision over Plaintiffs' compensation.

**Lack of Exemption**

76.

Throughout the Relevant Time Period, Plaintiffs were not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

77.

Throughout the Relevant Time Period, Futo's did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

78.

Throughout the Relevant Time Period, Futo's did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

79.

Throughout the Relevant Time Period, Futo's did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

80.

Throughout the Relevant Time Period, Plaintiffs did not supervise two or more employees.

81.

Throughout the Relevant Time Period, Futo's did not employ Plaintiffs in the capacity of "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

82.

Throughout the Relevant Time Period, Plaintiffs were not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1).

83.

Throughout the Relevant Time Period, Plaintiffs' work for Defendants did not involve interstate commerce within the meaning of the Motor Carrier Act, 49 U.S.C.A. § 10521.

84.

Throughout the Relevant Time Period, Plaintiffs normally operated a flatbed tow truck in their performance of work on behalf of Defendants.

85.

Throughout the Relevant Time Period, Plaintiffs did not travel outside of the State of Georgia in the performance of work on behalf of Defendants.

86.

At all times material hereto, Plaintiffs did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act, 49 U.S.C.A. § 31132(1).

**Additional Factual Allegations**

87.

Throughout the Relevant Time Period, Defendants compensated Plaintiffs on a commission-only basis.

88.

Throughout the Relevant Time Period, Defendants scheduled Plaintiffs to work twelve (12) hour work shifts.

***Simmons***

89.

Throughout the Relevant Time Period, Defendants calculated Simmons' compensation at 30% of the weekly collected tow truck fees generated by Simmons' work that week.

90.

During the Relevant Time Period, Defendants normally scheduled Simmons to work from 7:00 p.m. until 7:00 a.m., during each work shift.

91.

At all times relevant from approximately November 2018 through February 2019, Defendants generally scheduled Simmons to work 7 days during most, if not all, work weeks.

92.

At all times relevant from approximately November 2018 through February 2019, Simmons worked 84 hours during most, if not all, work weeks.

93.

Simmons was away from his employ with Defendant on medical leave during the
month of August 2020.

94.

With the exception of the medical leave taken by Simmons in August, 2020 at all
times relevant from approximately March 2019 through March 2021, Defendants
generally scheduled Simmons to work 5 days during most, if not all, work weeks.

95.

At all times relevant from approximately March 2019 through March 2021,
Simmons worked 60 hours during most, if not all, work weeks.

96.

Throughout the Relevant Time Period through March 2021, Simmons often worked
in excess of 12 hours per shift.

97.

Beginning in or about April 2021 and continuing through the present date,
Defendants have scheduled Simmons to work 4 days per week.

98.

At all times relevant from approximately April 2021 through the date of filing the within Complaint, Simmons worked 48 hours during most, if not all, work weeks.

**Roberson**

99.

Throughout the Relevant Time Period, Defendants calculated Roberson's compensation at 35% of the weekly collected tow truck fees generated by Roberson's work that week.

100.

During the Relevant Time Period, Defendants normally scheduled Roberson to work from 7:00 p.m. until 7:00 a.m., during each work shift.

101.

During the Relevant Time Period, Defendants generally scheduled Roberson to work 4 or 5 days during most, if not all, work weeks.

102.

During the Relevant Time Period, Roberson was not scheduled to work for Defendants on Mondays and Tuesdays.

103.

During the Relevant Time Period, Roberson was not scheduled to work for Defendants every other Sunday.

104.

During the Relevant Time Period, Roberson worked 48-60 hours during most, if not all, work weeks.

105.

Throughout the Relevant Time Period through March 2021, Roberson often worked in excess of 12 hours per shift.

106.

Throughout the Relevant Time Period, Defendants have been aware of the actual number of hours Plaintiffs worked performing tow services.

107.

Defendants knew or should have known that the FLSA applied to Plaintiffs.

108.

Defendants knew or should have known that Plaintiffs were entitled to FLSA overtime protections.

109.

29 U.S.C. § 207 requires that Defendants compensate Plaintiffs at a rate of one–and–one–half times their regular rate for all time worked in excess of forty (40) hours in a work week.

110.

Defendants knew or should have known that 29 U.S.C. § 207 requires that Defendants pay Plaintiffs a premium for all hours worked above forty hours in a workweek.

111.

29 C.F.R. § 778.118 sets forth the manner for calculating overtime wages to employees who receive a portion of their earnings in commission each week.

112.

29 C.F.R. § 778.118 requires that the sum total of the commission earned and other earnings be divided by the total hours worked in order to determine the regular hourly rate.

113.

Throughout the Relevant Time Period, Defendants failed to calculate a regular rate for Plaintiffs by dividing the sum total of the commissions they earned and other earnings by the total hours they worked.

114.

29 C.F.R. § 778.118 further requires that "(t)he employee must be paid extra compensation at one-half that rate for each hour worked in excess of" forty hours per week.

115.

Throughout the Relevant Time Period, Plaintiffs regularly worked more than forty (40) hours during each workweek.

116.

Throughout the Relevant Time Period, Defendants failed to compensate Plaintiffs at one-half of their regular rate for each hour worked in excess of forty hours in each week.

117.

Throughout the Relevant Time Period, Defendants willfully failed to compensate Plaintiffs at one-half of their regular rate for each hour worked in excess of forty hours in each week.

118.

As a result of Defendants' willful violation within the meaning of 29 U.S.C. § 255(a), Plaintiffs seek to recover damages for each work week in the three years preceding the initiation of this action.

**Count 1 - Failure to Pay Overtime**

119.

The allegations in all preceding paragraphs above are incorporated by reference.

120.

Throughout the Relevant Time Period, Plaintiffs have been employees covered by the FLSA and entitled to the overtime protections set forth in 29 U.S.C. § 207(a).

121.

Throughout the Relevant Time Period, Plaintiffs regularly worked in excess of forty (40) hours during each work week.

122.

Throughout the Relevant Time Period, Defendants failed to pay Plaintiffs at one-and-one-half times their regular rate for time worked in excess of forty (40) hours during each work week.

123.

Throughout the Relevant Time Period, Defendants willfully failed to pay Plaintiffs at one–and–one–half times their regular rate for work in excess of forty (40) hours in any work week.

124.

Plaintiffs are entitled to payment of overtime in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

125.

As a result of the willful underpayment of overtime compensation as alleged above, Plaintiffs are entitled to a three year statute of limitations pursuant to 29 U.S. C. § 255(a) and liquidated damages in accordance with 29 U.S.C. § 216(b).

126.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorneys' fees in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully pray:

1. That their claims be tried before a jury;

2. That they be awarded a judgment for due but unpaid overtime compensation in amounts to be determined at trial against Defendants, jointly and severally from three years preceding the filing of this action;

3. That they be awarded a judgment for additional like amounts as liquidated damages against Defendants, jointly and severally or prejudgment interest if liquidated damages are not awarded;

4. That they be awarded a judgment for their costs of litigation, including their reasonable attorneys' fees from Defendants, jointly and severally;

5. That they be awarded a judgment for nominal damages; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

101 MARIETTA STREET
SUITE 2650
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 (f)
Benjamin@dcbflegal.com
charlesbridgers@dcbflegal.com

/s/ MITCHELL D. BENJAMIN
MITCHELL D. BENJAMIN
GA. BAR NO. 049888

/s/CHARLES R. BRIDGERS
CHARLES R. BRIDGERS
GA. BAR NO. 080791