IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHANNON SIMMONS, et al.,

  Plaintiffs,

  v.

FUTO'S, INC., et al.,

  Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-3591-TWT

**OPINION AND ORDER**

This is a FLSA overtime case. It is before the Court on the Plaintiffs Shannon Simmons and Eranus Roberson's Motion for Summary Judgment [Doc. 41], the Defendants Futo's, Inc. and Norman Rashid's Motion for Summary Judgment [Doc. 43], and the Plaintiffs' Motion for Sanctions [Doc. 47]. For the reasons set forth below, the Plaintiffs' Motion for Summary Judgment [Doc. 41] and the Plaintiff's Motion for Sanctions [Doc. 47] are DENIED. The Defendants' Motion for Summary Judgment [Doc. 43] is GRANTED in part and DENIED in part.

I. Background[1]

This action arose from the Defendants Futo's, Inc. ("Futo's") and Noman Rashid's alleged failure to pay overtime wages earned by the Plaintiffs as

---

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

employees of the Defendants, in violation of the Fair Labor Standards Act ("FLSA"). (Compl. ¶¶ 1-3). Futo's is a car towing company. (Pls.' Statement of Undisputed Material Facts ¶ 1). Futo's tows vehicles to its lot and takes payment from a towed car's owner when the owner comes to retrieve the car. (*Id.* ¶¶ 5-6, 9). Futo's was owned by Steve and John Futo until March 2019, when Diane Leonall purchased it. (Defs.' Statement of Undisputed Material Facts ¶ 1). Roberson was employed by Futo's from at least March 1, 2019 until July 24, 2019. (*Id.* ¶ 2). Simmons was employed by Futo's from at least March 1, 2019 through August 25, 2021. (*Id.* ¶ 4). Simmons and Roberson were employed by Futo's as tow truck drivers. (Pls.' Statement of Undisputed Material Facts ¶¶ 19-20).

Although Futo's did not have a contract with the City of Atlanta to provide towing services, it often took calls from the City and primarily towed in Zone 2 for the Atlanta Police Department. (Leonall Dep. at 13, 15-16). Futo's markets its services to the general public in the metro Atlanta area, however, on its website. (Defs.' Statement of Undisputed Material Facts ¶ 14). Futo's utilized the services of an accountant to handle its payroll and relied on its accountant to ensure that its payment schemes complied with all applicable laws, but never asked its accountant if paying drivers on straight commission was legal. (*Id.* ¶ 17; Leonall Dep. at 53-54). Neither Simmons nor Roberson ever discussed overtime pay or their hourly rate with Futo's. (Defs.' Statement of Undisputed Material Facts ¶ 22).

2

Futo's kept time records by requiring the Plaintiffs to fill out a timesheet each week. (*Id.* ¶ 25). The Plaintiffs were typically scheduled for four to five 12-hour shifts per week. (Pls.' Statement of Undisputed Material Facts ¶¶ 21-22). Each week, Futo's paid its drivers a commission calculated as a percentage of the total revenue they derived from the tows they performed that week. (Defs.' Statement of Undisputed Material Facts ¶ 34). Simmons was paid a 30-percent commission for each tow trip, while Roberson was paid a 35-percent commission. (*Id.* ¶¶ 38, 40; Pls.' Statement of Undisputed Material Facts ¶¶ 35-37, 40). Futo's also calculated the Plaintiffs' hourly rates each week by dividing their total compensation by the number of hours worked. (Defs.' Statement of Undisputed Material Facts ¶¶ 36-37). Based on Futo's time and pay records and the Plaintiffs' paystubs, Simmons asserts that he is owed $15,632.58 in back wages and Roberson asserts that he is owed $2,097.89. (Pls.' Statement of Undisputed Material Facts ¶¶ 47-48).

The Plaintiffs filed their Complaint on August 30, 2021, asserting a single claim for failure to pay overtime wages in violation of the FLSA. (Compl. ¶¶ 119-26). The parties filed their Motions for Summary Judgment on August 5, 2022, followed by the Plaintiffs' Motion for Sanctions on August 26, 2022. The Court finds it prudent to address the statute of limitations issue raised by Futo's in its Motion for Summary Judgment before turning to the Motion for Sanctions, followed by the substantive issues presented in the Motions for Summary Judgment.

## II.     Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

### A. Statute of Limitations

Essentially, the Plaintiffs argue that the Defendants' violations of the FLSA were willful and lacking in good faith and, therefore, a three-year statute of limitations applies under 29 U.S.C. § 255(a). (Pls.' Mot. for Summ. J. at 2, 17-20). The Defendants assert that the standard two-year statute of limitations applies, barring all of Roberson's claims and some of Simmons' claims. (Defs.' Br. in Supp. of Mot. for Summ. J. at 2-3; Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. at 6-9).

In an action for unpaid overtime compensation, the statute of limitations is "two years after the cause of action accrued," with the exception that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To establish a willful violation, "the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the [FLSA] or showed reckless disregard about whether it was." *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1289 (11th Cir. 2021). "An employer acts with reckless disregard if it fails to make adequate inquiry into whether its conduct is in compliance with the [FLSA]." *Id.* (alterations, quotation marks, and citations omitted).

Viewing the evidence in the light most favorable to the Plaintiffs, there is a genuine issue of material fact as to whether any purported FLSA violation was willfully committed. *See Adickes*, 398 U.S. at 158-59. More specifically, this issue hinges on whether the Defendants' reliance on their accountant's advice as to whether their payroll practices complied with the FLSA constituted an "adequate inquiry," which is a fact intensive inquiry not suited for summary judgment. And the issue is certainly material because, if the Defendants did not act with reckless disregard as to their obligations under the FLSA, the standard two-year statute of limitations will apply. *See* 29 U.S.C. § 255(a). If the two-year limitations period applies, only the portion of Simmons's claim accruing after August 30, 2019 will survive, as Roberson's employment with Futo's ended in July 2019 and the Complaint in this action

5

was not filed until August 30, 2021. (*See* Defs.' Statement of Undisputed Material Facts ¶¶ 2-3). Accordingly, the Court denies the Defendants' Motion for Summary Judgment as to the statute of limitations defense.

### B. Motion for Sanctions

The Plaintiffs seek to exclude the Defendants' use of the retail or service exemption defense to FLSA liability. They argue that the Defendants never pleaded the defense or raised it in discovery responses, and their corporate deposition designee, Leonall, did not testify as to this exemption. (Mot. for Sanctions at 2-10). Thus, the Plaintiffs argue, Rule 37(c) of the Federal Rules of Civil Procedure requires the Court to exclude the defense. (*Id.*). The Defendants respond that their answer pleaded the applicability of a non-specific exemption and that, "given the limited number of potentially applicable exemptions, and the fact that [the] Plaintiffs characterized themselves as 'commissioned workers,' it is reasonable and logical" that the Defendants' vague answer was referring to the commission exemption. (Defs.' Resp. in Opp. to Mot. for Sanctions at 3). Additionally, the Defendants contend that Leonall stated during the deposition that there were applicable exemptions and that the Plaintiffs did not question her specifically about the commission exemption. (*Id.* at 3-4). In any event, the Defendants argue, the defense should be permitted because the Plaintiffs cannot show that they were prejudiced by any omission since the summary judgment stage afforded them adequate time to prepare a response. (*Id.* at 4-7).

6

The Eleventh Circuit has held that district courts "may consider an affirmative defense that did not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion." *Miranda de Villalba v. Coutts & Co. (USA) Intern.*, 250 F.3d 1351, 1353 (11th Cir. 2001). In other cases, the Eleventh Circuit has held that the omission of an affirmative defense in an answer does not prejudice the plaintiff where the defense is first raised in the defendant's motion for summary judgment. *See, e.g.*, *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007). This seems especially true in cases where the defense at issue is not one specifically listed in Rule 8(c) of the Federal Rules of Civil Procedure. *See id.* at 1351-52 ("In a case like this one, the reality of notice and the reality of prejudice in fact must be considered.").

The Court finds merit in the Defendants' position and determines that sanctions are not warranted. First, the Plaintiffs' assertions that the Defendants failed to plead an exemption defense in their Answer are not persuasive. The Defendants' twenty-first defense reads: "Plaintiffs' Complaint may be barred in whole or in part because Plaintiffs are exempt from the FLSA's minimum wage and overtime requirements." (Defs.' Answer at 6). As the Plaintiffs note numerous times in their Complaint, they were paid on commission. (*See* Compl. ¶¶ 87, 111-13). The exemption at issue, set forth in 29 U.S.C. § 207(i), is applicable to employees of retail or service establishments

7

who earn at least half their wages through commission.[2] Plainly, the Plaintiffs' allegations that they were "sandbagged" by the Defendants' assertion of an exemption clearly applicable to commissioned workers, after having put the Plaintiffs on notice that an exemption applied, are disingenuous.

In that same vein, the Plaintiffs mischaracterize Leonall's deposition testimony about the applicability of an exemption. Whereas the Plaintiffs assert that they had "every right to rely on the corporation's failure to state any exemption," Leonall actually testified that based on her attorney's statements, certain exemptions applied, but that she would "have to rely on [her] attorney's guidance" as to which exemptions applied. (Mot. for Sanctions at 8; Leonall Dep. at 48-49). Certainly, the Defendants could have been more forthcoming about their intent to assert the commission exemption, but the Plaintiffs cannot fairly claim to have been blindsided by the assertion of the defense.

For the same reasons, the Plaintiffs cannot establish any prejudice flowing from the Defendants' assertion of the defense at the summary judgment stage. *See Miranda de Villalba*, 250 F.3d at 1353. In particular, the Plaintiffs cannot fairly argue that they had no notice of the Defendants' intent

---

[2] Although the Plaintiffs characterize this exemption as the retail or service establishment exemption, this Court and the Eleventh Circuit more commonly refer to it as the commission exemption. *See, e.g., Moore v. Advanced Cable Contractors*, 2013 WL 3991966 at *4 (N.D. Ga. Aug. 1, 2013).

to assert the commission exemption as a defense. *See Proctor*, 494 F.3d at 1351-52 (noting that the realities of notice and prejudice to the plaintiff must be considered). Accordingly, the Plaintiffs' Motion for Sanctions [Doc. 47] is denied, and the Court will consider the Defendants' assertion of the commission exemption in ruling on the Motions for Summary Judgment.

### C. Motions for Summary Judgment

The parties agree that the Plaintiffs were covered employees under the FLSA and, therefore, subject to the FLSA's minimum wage and overtime requirements. They also agree that the Plaintiffs were paid solely through commission. They dispute, however, whether the commission exemption to the FLSA's regular-rate overtime requirement applies.

The overtime requirement of the FLSA requires employers to pay their employees overtime compensation for all hours worked past 40 hours per workweek "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An exception to this requirement is known as the commission exemption, which applies to employers of "a retail or service establishment" where: "the employee's regular rate of pay [is] more than one and one-half times the minimum hourly rate[,] and . . . more than half of the employee's compensation comes from commissions." *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361, 1365 (N.D. Ga. July 28, 2009); 29 U.S.C. § 207(i). "The regular hourly rate of pay of an employee is determined by dividing his total remuneration . . . in any workweek by the total number of

hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Throughout the duration of the Plaintiffs' employment, the federal minimum wage was $7.25 per hour, which results in a one and one-half time minimum rate of $10.88 per hour. *See* 29 U.S.C. § 206. When the commission exemption applies, an employer will not be considered to have violated the regular rate overtime requirement in section 207(a)(1) so long as the employee is paid at least one and one-half times the minimum hourly rate for all hours worked in a workweek in excess of 40 hours. *See* 29 U.S.C. § 207(i).

### a. Whether Futo's Qualifies as a Retail or Service Establishment Under the FLSA

The parties disagree as to whether Futo's constituted a retail or service establishment under 29 C.F.R. § 779.313 and 29 U.S.C. § 207(i). The Plaintiffs argue that Futo's does not qualify as a retail or service establishment because it has not presented evidence showing that 75 percent of its sales volume is not for resale and because there is no retail concept within the towing industry. (Pls.' Br. in Opp. to Defs.' Mot. for Summ. J. at 5-6 (citing 29 C.F.R. § 779.312, 313). The Defendants assert that Futo's services are not for resale because it is paid for tows directly by the vehicle owner, regardless of whether the owner is the person who called for the tow. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J. at 16-17). For the same reason, they contend, Futo's has a retail concept since its business model involves providing services paid for by the

10

end-user. (*Id.* at 20-21).

As the Plaintiffs point out, to qualify as a retail or service establishment, "75 percent of [a business's] sales of goods or services, or of both, must be recognized as retail in the particular industry[,] and . . . not over 25 percent of its sales . . . may be sales for resale." 29 C.F.R. § 779.313. The Code of Federal Regulations further provides that, "[t]ypically, a retail or service establishment is one which sells goods or services to the general public . . . . [i]t provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living." 29 C.F.R. § 779.318(a).

Based on the Court's research, the question of whether a towing business qualifies as a retail or service establishment appears to be an issue of first impression in the Eleventh Circuit. The Plaintiff notes this Court's decision in *Wirtz* v. *Robinson & Stephens, Inc.*, 1972 WL 852 (N.D. Ga. June 6, 1972) but the Court does not find it persuasive given its age. As an initial matter, it seems plain that towing services like those that Futo's provides are inherently not for resale. Despite the Plaintiffs' focus on who pays Futo's for its services, the term "resale" in the exemption text is narrowly defined as when "the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as part, component, or ingredient of another article." *See* 29 C.F.R. § 779.331. Applying that definition, the record is clear that Futo's never provided its

11

towing services as a component or ingredient of another service—its services were always simply towing a vehicle from one place to another, regardless of who paid for the tow. Accordingly, the Court determines that there is no genuine issue of material fact as to whether Futo's services were for resale. Therefore, the Defendants have met this prong of the commission exemption standard.

The question that remains, then, is whether at least 75 percent of Futo's services are recognized as retail in the towing industry. *See* 29 C.F.R. § 779.313. Although there is little case law to guide the Court's analysis, it seems apparent that towing services are services provided "for the comfort and convenience of [the] public in the course of its daily living," which is a consideration in the retail establishment determination. 29 C.F.R. § 779.318(a). There is also sufficient evidence that these services were provided to the general public. *See id.* Regardless of whether the service calls were initiated by the City of Atlanta, the Atlanta Police Department, or individual customers, Futo's was tasked with moving immobilized, abandoned, or undriveable vehicles to free up public spaces and roadways. (Defs.' Mot. for Summ. J., Ex. C ¶¶ 9-10). Undoubtedly, services that help reduce traffic congestion are a convenience for the general public. There is also evidence that Futo's provided services like jump starts and tire changes, which are indisputably services of convenience. (*See* Simmons Dep. (Pls. Mot. for Summ. J., Ex. D) at 124). Thus, because all of the services that Futo's provides satisfy

12

the retail or service establishment standard, the 75-percent requirement has been met here. *See* 29 C.F.R. § 779.313. For these reasons, the Court finds no genuine issue of material fact exists as to whether Futo's constituted a retail or service establishment under 29 C.F.R. § 779.313 and 29 U.S.C. § 207(i). Accordingly, the Defendant's Motion for Summary Judgment will be granted as to this issue.

### b. Whether the Plaintiffs Were Paid Overtime Wages

Because the commission exemption requires an employer to show that it was paying covered employees at least one and one-half times the minimum hourly rate for all overtime hours, this analysis requires the Court to calculate the Plaintiffs' hourly rate from their commission rate for each workweek at issue. *See* 29 U.S.C. § 207(i); 29 C.F.R. § 778.109. To support their arguments as to overtime pay, the Plaintiffs submitted affidavits with exhibits showing their wages earned each week along with a calculation of overtime wages allegedly owed to them by the Defendants. (*See* Pls.' Mot. for Summ. J., Exs. 2, 3). The Defendants submitted a declaration of Leonall with attached exhibits of the Plaintiffs' time and pay records for the relevant time period. (*See* Defs.' Mot. for Summ. J., Ex. C). The Defendants' pay records list two hourly rates, one with an hour quantity of "40," and one with an hour quantity of "20." (*See, e.g., id.* at 9). Based on the Court's review of these records, the hourly rate for the 20-hour quantity during each pay period at issue fell below $10.88 on at least a few occasions. (*See, e.g., id.* at 25, 27, 74). But the Defendants dispute

13

that the Plaintiffs actually worked 60 hours per pay period, arguing that they were often paid for hours scheduled rather than hours actually worked. (Defs.' Br. in Opp. to Pls.' Mot. for Summ. J. at 17-18). The Defendants time records consist of its handwritten logbooks that list each towing job the Plaintiffs performed, and the date and time of the tow. (*See* Defs.' Mot. for Summ. J., Ex. C at 117-33).

Even assuming the authenticity and admissibility of these records, the Court cannot determine with any precision from these records the number of hours actually worked. These records show the times that tows were completed, but do not record either the shift times for the drivers or the time spent waiting for towing calls in between tows. And the Plaintiffs' self-drafted damage calculations, based on the same records, are of little help in this regard. Thus, the evidence before the Court as to this prong of the commission exemption creates a genuine issue of material fact as to whether the Plaintiffs actually worked all of the hours at issue. This determination is material because, without knowing the number of hours actually worked, the Court cannot calculate and determine whether the Plaintiffs were paid any overtime wages due. *See* 29 C.F.R. § 778.109 (noting that the total renumeration must be divided by the total number of hours *actually worked*). Accordingly, both Motions for Summary Judgment will be denied as to this issue.

### IV.   Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Summary

Judgment [Doc. 41] and the Plaintiff's Motion for Sanctions [Doc. 47] are DENIED. The Defendants' Motion for Summary Judgment [Doc. 43] is GRANTED in part and DENIED in part.

SO ORDERED, this  2nd  day of December, 2022.

_____
THOMAS W. THRASH, JR.
United States District Judge